WILLIAM M. LIDDON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARIA PROTHRO LIDDON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 41495, 41497. Filed September 21, 1954.

*John J. Hooker, Esq.,* and *Albert B. Maloney, C. P. A.,* for the petitioners.

*Homer F. Benson, Esq.,* for the respondent.

JOHNSON, *Judge:* An epitomization of the facts will aid us in discussing this case. The old closely held corporation was organized in 1946; it engaged in a successful automobile business for 2 years. Prior to July 17, 1948, the date of the surrender of the old corporate charter, the stock of the old corporation had been liquidated and some of its assets sold to a new corporation. This new corporation had been incorporated on May 1, 1948. The old corporation held a franchise to sell Pontiac automobiles, but this franchise was terminated prior to the liquidation of the old corporation. Another Pontiac franchise was issued to the new corporation on May 1, 1948. Petitioner and his wife held 80 per cent of the stock in the old corporation and more than 80 per cent of the stock in the new corporation. They each received a gain of $68,818.64 from the liquidation of the old corporation in 1948. In the beginning of this series of transactions petitioner and his wife held stock in the old corporation; at the termination they held stock in the new corporation plus "money-to-boot."

Petitioner contends that there was a complete liquidation of the old corporation under section 115 (c), and the gain therefrom was capital gain. In opposition respondent urges that the transactions, in substance as distinguished from form, constitute a reorganization within the meaning of section 112 (b) (4) or (5) and 112 (g) (1) (D), with the result that the gain was taxable under section 112 (c). In the alternative respondent maintains that the redemption or cancellation of the stock of the old corporation was essentially equivalent to the distribution of accumulated earnings and profits and was a taxable dividend under section 115 (g).

We shall consider the first item of dispute between the parties, that is, whether there is a taxable gain to petitioner under the provisions of section 112 (c). The pertinent provisions of this section are as follows:

SEC. 112. RECOGNITION OF GAIN OR LOSS.

(c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—

(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5), * * * of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph * * * to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if

any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property.

The first question to be considered is whether there was a "plan of reorganization." The 1939 Code does not define a plan of reorganization but it does define the term "reorganization" in section 112 (g) (1). There, under (D), a reorganization means "a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred." Control, under section 112 (h), means ownership of stock possessing at least 80 per cent of the total voting power. It is immediately apparent that the transfer of some assets of the old corporation to the new, while petitioner and his wife controlled at least 80 per cent of the voting stock of both corporations, is a reorganization as defined by the 1939 Code.

In our opinion the transfer of these assets was only one step in a series of transactions under a single plan. Even though there was no formal written plan, the various transactions—the sale of Davis's stock, the formation of a new corporation, the transfer of assets from the old to the new corporation, the liquidation of the old corporation after the new corporation was in business—all indicate a master plan of reorganization rather than the mere liquidation of the old corporation. When we must determine whether there has been a reorganization, a liquidation, a sale, or an exchange in a series of transactions, it is proper for us to look at the beginning and end of the series. See *Illinois Water Service Co.*, 2 T. C. 1200, 1231. See also *William H. Redfield*, 34 B. T. A. 967, and *Richard H. Survaunt*, 5 T. C. 665, affd. 162 F. 2d 753. Cf. *Standard Realization Co.*, 10 T. C. 708; *Charles R. Mathis, Jr.*, 19 T. C. 1123. It is also proper for us to consider all of the transactions together rather than separately. *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179. And if in fact there was a "reorganization" of the old corporation, the liquidation was merely one of the steps in the integrated transactions. *W. N. Fry*, 5 T. C. 1058, 1067.

Now that we have determined that there was a plan of reorganization and a distribution to petitioner and his wife pursuant to that plan, we must determine if the distribution was within the provisions of paragraph (1) of section 112 (c). Paragraph (1) refers to section 112 (b) (3) which deals with exchanges solely in kind when stock is exchanged for stock. That section is as follows:

(b) Exchanges Solely in Kind.—

\*      \*      \*      \*      \*      \*      \*

(3) Stock for stock on reorganization.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

When section 112 (b) (3) is read under the provisions of section 112 (c) (1) there must be an exchange of stock for stock plus something "to boot."

Returning to the facts again, during the liquidation of the old corporation petitioner exchanged his stock for money. In form this was not an exchange of stock for stock plus something "to boot." However, all of the transactions, when viewed as one plan of reorganization, culminated in an exchange of stock for stock plus money. Under section 112 (c) (1) the gain in the amount of money that petitioner received should be recognized.

If this gain is recognized should it be taxed? Section 112 (c) (2) answers "yes" if the distribution "has the effect of the distribution of a taxable dividend." It should be pointed out that for this section of the 1939 Code there is no difference between liquidating dividends and ordinary dividends. *John S. Woodard*, 30 B. T. A. 1216, 1227. Cf. sec. 115 (c).

An examination of the legislative history of section 112 (c) (2) will aid us in determining the legislative intent of this section. In *John S. Woodard, supra*, we established that section 112 (c) (2) first appeared in the Revenue Act of 1928 as section 203 (d) (2) of the 1924 Act. From an analysis of the House Ways and Means Committee and the Senate Finance Committee reports on the Revenue Bill of 1924,[1] we pointed out that the primary purpose of Congress in enacting section 203 (d) (2) was to prevent the taxing of liquidating dividends, to the extent of accumulated earnings, at the capital gain rate. It is significant that the wording of section 112 (c) (2) as found in the 1928 Act has been unchanged through the years.

We recognize that the money petitioner received was not in fact dividends, but we also believe that to the extent of the accumulated earnings, the liquidation of the stock had the effect of the distribution of taxable dividends. The record fully supports this conclusion.

---

[1] (2) There is no provision of the existing law which corresponds to paragraph (2) of subdivision (d). This subdivision provides that any amount distributed by a corporation in connection with a reorganization which has the effect of a taxable dividend shall be taxed as a dividend and not as a taxable gain.

The necessity for this provision may best be shown by an example: Corporation A has capital stock of $100,000 and earnings and profits accumulated since March 1, 1913, of $50,000. If it distributes the $50,000 as a dividend to its stockholders, the amount distributed will be taxed at the full surtax rates.

On the other hand, corporation A may organize corporation B, to which it transfers all its assets, the consideration for the transfer being the issuance by B of all its stock and $50,000 in cash to the stockholders of corporation A in exchange for their stock in corporation A. Under the existing law, the $50,000 distributed with the stock of corporation B would be taxed, not as a dividend, but as a capital gain, subject only to the 12½ per cent rate. The effect of such a distribution is obviously the same as if the corporation had declared out as a dividend its $50,000 earnings and profits. If dividends are to be subject to the full surtax rates, then such an amount so distributed should also be subject to the surtax rates and not to the 12½ per cent rate on capital gain. * * * [H. Rept. No. 179, 68th Cong., 1st Sess., p. 14. See also S. Rept. No. 398, 68th Cong., 1st Sess., p. 15.]

There was no evidence that the old corporation paid any dividends other than stock dividends during the 2 years of its operation as a successful corporation. In the beginning of 1948 the earned surplus account had a credit balance of $98,800.52 and on September 30, 1948, after the stock had been liquidated, the credit balance was $61,335.99. While there was a business purpose in the liquidation of the minority stockholder's interest, there is doubt in our minds that the old corporation was liquidated for a business purpose other than tax savings. Cf. *Estate of John B. Lewis*, 10 T. C. 1080, affd. 176 F. 2d 646. No one can ignore the fact that the substance of the old corporation's business was carried on by the new corporation; in fact initially the business was carried on in the same building. In addition, control of both corporations was vested in the same two stockholders. It is our conclusion that the distribution was made pursuant to a plan of reorganization and that the distribution was in effect a taxable dividend. Therefore, it should be taxed to each distributee under section 112 (c) (2). The respondent must be sustained.

Perhaps a word about petitioner's contentions would be proper. Petitioner maintains that the gains he received were the result of a transaction within the contemplation of section 115 (c).[2] This section provides that amounts distributed in complete liquidation of the corporation shall be treated as a full payment in exchange for the stock.

Under petitioner's contentions the facts would have to support a finding that there was only a liquidation of the old corporation rather than a reorganization. Under this argument, where there were a series of transactions whereby the stockholders of the old corporation became stockholders in the new, each transaction must be considered as separate and distinct. Under this theory we must consider that petitioner sold his stock to the old corporation, and we must ignore all other transactions.

The record before us could not support this finding. Take for instance the time relationship between some of these transactions. On April 26, 1948, at a special meeting of the stockholders of the old corporation, petitioner advised them that Davis wished to resign. There followed a discussion after which it was decided to liquidate the old corporation at the earliest date. Four days later, on May 1, Liddon Pontiac, Inc., was incorporated and on the same day the new corpora-

---

[2] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(c) DISTRIBUTION IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112.· * * *

tion, with petitioner as the principal party, received a franchise for the sale of Pontiac automobiles. During the next 4 months the old corporation was completely liquidated and the new continued its business. The synchronization of these transactions is something more than mere coincidence. It appears to us as a plan of reorganization. And since the liquidation was part of the plan, respondent must be sustained.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

RAUM, BRUCE, FISHER, and BAAR, *JJ.*, concur in the result.