OPINION. Rice, Judge: Respondent predicated his disallowance of the claimed net operating loss carry-back here on three grounds: (1) That the sale of petitioner’s noninventory assets was, in fact, made to Silberstein as representative of the controlling stockholder group, and that any loss thereon is barred by section 24 (b) (1) (B) of the 1939 Code;[1] (2) that if the sale was, in fact, made to Old Peoria, petitioner’s transfer of its assets was pursuant to a plan of reorganization within the provisions of section 112 (b) (3) and (g) (1) (D)[2] and no loss is, therefore, recognized; and (3) that in any event, petitioners suffered no real economic loss sufficient to constitute a “net operating loss” within the meaning of section 122. Whatever the merits of respondent’s positions enumerated as (1) and (3) above, it is clear that the purchase of petitioner’s noninventory assets by a corporation wholly owned by petitioner’s controlling stockholders was pursuant to a plan of reorganization within the provisions of section 112 (b) (3) and (g) (1) (D). The substance of petitioner’s argument is that the sale of its noninventory assets was incident only to its own liquidation, and not pursuant to any plan of reorganization, citing United States v. Arcade Co., 203 F. 2d 230 (C. A. 6, 1953) certiorari denied 346 U. S. 828, and Charles R. Mathis, Jr., 19 T. C. 1123 (1953). Those cases are clearly distinguishable from the one before us here, as we shall presently indicate. It cannot be denied that the literal requirements of section 112 (g) (1) (D) are satisfied by the bare facts of the sale here in question: petitioner sold its noninventory assets to Old Peoria, a corporation organized to purchase and receive title to those assets; a majority of petitioner’s stockholders (both before and) immediately thereafter controlled Old Peoria. “Control” as defined by section 112 (h) means 80 per cent or more of the new corporation’s stock. It is not necessary that 80 per cent of the shareholders of the old corporation be shareholders of the new company. Reilly Oil Co., 13 T. C. 919 (1949), affd. 189 F. 2d 382 (C. A. 5, 1951) ; Toklan Royalty Corporation v. Jones, 58 F. Supp. 967 (W. D., Okla., 1944), appeal dismissed 147 F. 2d 856 (C. A. 10, 1945). It is apparent, further, that the steps by which the transfer from petitioner to Old Peoria was made, added together, result in a clear plan of reorganization, even though no written or formal plan is evident. William M. Liddon, 22 T. C. 1220 (1954); Richard H. Survaunt, 5 T. C. 665 (1945), affd. 162 F. 2d 753 (C. A. 8,1947). To be sure, petitioner’s liquidation was the objective of its shareholders once that decision was reached in January 1948. Between that time and May 13, 1948, however, its controlling stockholders, owning 75.9 per cent of its outstanding shares, decided that should no bid exceeding $242,080 be made for the noninventory assets at the auction, they would purchase those assets for that sum and utilize them in the business of a newly organized corporation. To effect the purchase, they immediately undertook the organization of Old Peoria, all of whose stock they owned. Issuance of the charter was delayed until June 5, 1948, because the name originally selected was not available. Hence, at the auction on May 20, Silberstein bid in the property at the agreed-upon price for his “nominee or nominees,” but Old Peoria paid petitioner, assumed outstanding mortgages and taxes, and took title in its name. It thereafter held the property, and, pursuant to the powers granted it by its charter, has rented various parts thereof to some 20 or 25 tenants. It was still a going concern at the date of the hearing. Whatever tax-saving motives may have prompted the controlling stockholders here are unimportant; what they did was to effect a reorganization of petitioner through Old Peoria. Cf. Gregory v. Helvering, 293 U. S. 465 (1935). It is unimportant, contrary to petitioner’s contention, that the business carried on by the new corporation is different from that carried on by the old. Ernest F. Becher, 22 T. C. 932 (1954), on appeal (C. A. 2, October 8, 1954); Morley Cypress Trust, Schedule “B”, 3 T. C. 84 (1944). Old Peoria, in fact, possessed the necessary powers to own and operate a distillery; it also had the authority to carry on a real estate business, which it did; and all powers possessed by it were perpetual. United States v. Arcade Co., supra, and Charles R. Mathis, Jr., supra, cited by petitioner, are clearly distinguishable because in both cases, as the court said in United States v. Arcade Co., 203 F. 2d, page 233, When the old corporation was dissolved and the assets were transferred to its former stockholders, there was a break in the continuity of ownership * * *. Here, there was no break; and the transfer from petitioner to Old Peoria is further to be distinguished from instances where the transfer of property from one corporation to another was truly and solely incident to the liquidation of the old corporation. Cf. Standard Realization Co., 10 T. C. 708 (1948), where the new corporation was organized only to assist in liquidating the old corporation’s assets, and, once that had been accomplished, was dissolved, in fact, prior to the old corporation. The case here-closely parallels the situation before us in Ernest F. Becher, supra. In both instances, the old corporation decided to liquidate because of unfavorable postwar conditions; thereafter, but prior to final dissolution, the controlling stockholders decided to acquire a part of the old corporation’s assets and formed a new corporation to effect the transfer; thereafter the old corporation was dissolved, and the new corporation continued to carry on a business different from that of the old. We held there and so hold here that the result of the various steps was conclusive evidence that the transfer of property from the old corporation to the new was pursuant to a plan of reorganization within the meaning of section 112 (g) (1) (D) ; and, under section 112 (b) (3), no loss is recognized on the sale of petitioner’s assets to Old Peoria. Walter S. Heller, 2 T. C. 371 (1943); affd. 147 F. 2d 376 (C. A. 9, 1945) ; certiorari denied 325 U. S. 868 (1945). Decision will be entered for the respondent. SEC. 24. ITEMS NOT DEDÜCTIBLE. (b) Losses Erom: Sales or Exchanges of Property.— (1) Losses disallowed. — In. computing net income no deduction shall in any case ibe allowed in respect of losses from sales or exchanges of property, directly or indirectly— ******* (B.) Except in the case of distributions in liquidation, between an individual and a corporation more than 50 per centum1 in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual; SEC. 112. RECOGNITION Off GAIN OR LOSS. (b) Exchanges Solely in Kind.— (3) Stock por stock on reorganization. — No gain or loss shall be recognized if stock or securities in. a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. • ***•»» (g) Definition of Reorganization. — * * * (1) The term, “reorganization” means * * * (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred, * * *