Donald L. BENTSEN et al., Plaintiffs,

v.

Robert L. PHINNEY, Defendant.

Civ. A. No. 1889.

United States District Court
S. D. Texas,
Corpus Christi Division.

Nov. 20, 1961.

Fulbright, Crooker, Freeman, Bates & Jaworski (Charles W. Hall and C. W. Wellen), Houston, Tex., for plaintiffs.

Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Myron C. Baum, William A. Minor, Attys, Dept. of Justice, Washington, D. C., Woodrow B. Seals, U. S. Atty., Southern District of Texas, John H. Baumgarten, Asst. U. S. Atty., Houston, Tex., for defendant.

GARZA, District Judge.

This is a suit for refund of federal income taxes paid by plaintiffs to defendant.

All of the facts have been stipulated, and the case has been submitted to the Court on written briefs and on oral argument.

A brief summary of the stipulated facts is as follows:

Plaintiff taxpayers were shareholders of Rio Development Company, a Texas corporation, which in 1955 was engaged in the land development business in the Rio Grande Valley, along with two other corporations, Bentsen Brothers, Inc., and Bentsen Loan & Investment Company.

The shareholders in such three corporations were all members of the families of Lloyd M. Bentsen, Sr., and Elmer C. Bentsen.

On March 7, 1955, the three corporations transferred all of their respective properties, subject to their liabilities, to the newly formed Consolidated American Life Insurance Company. For the sake of brevity and consistency, the former will be referred to as the "Transferor Corporations", and the latter will be referred to as the "Insurance Company".

Immediately thereafter, the stockholders of the three transferor corporations surrendered all of their stock in the three transferor corporations for cancellation. The three transferor corporations were liquidated and dissolved, and the Insurance Company issued all of its voting stock directly to the former stockholders of the three transferor corporations which had been dissolved, to Bentsen Development Company, a partnership, and to Lloyd M. Bentsen, Sr., individually. Bentsen Development Company, a partnership, and Lloyd M. Bentsen, Sr., individually, had also transferred their assets to the Insurance Company.

It is stipulated that prior to the transaction, the transferor corporations were going concerns in the land development business in the Rio Grande Valley of Texas. The Insurance Company was a going concern created to carry on the corporate business of selling life insurance.

It has been stipulated that there were business reasons and purposes for the transaction.

It is the exchange by the plaintiff taxpayers of their stock in Rio Development Company for Insurance Company stock that was the specific event out of which this refund suit arose.

It has been stipulated that there was continuity of corporate activity as between the Rio Development Company and the Insurance Company, the only change being that the type of business carried on was changed from the land development business to the insurance business.

The net result of the transactions involved in this case was that all and the same assets which had been owned by the transferor corporations, were, after the transaction, owned by the Insurance Company. The same individuals who had owned stock in the transferor corporations now owned the stock of the Insurance Company.

It has also been stipulated that prior to the consummation of the corporate transaction involved here, the Commissioner of Internal Revenue was requested to rule in advance on the federal income

tax consequences of the transaction, and that the said Commissioner on two separate occasions ruled that in his opinion an exchange of stock in the Insurance Company for the land development companies' or transferor corporations' stock, was taxable because the Insurance Company engaged in a different business from the three land development corporations.

Although the plaintiff taxpayers disagreed with the Commissioner's ruling, in their respective 1955 income tax returns they reported the exchange of their Rio Development Company stock for Insurance Company stock as a taxable event and paid a tax thereon.

Thereafter the necessary procedural steps were taken to bring this refund suit before the Court for a decision as to the income tax consequences of such exchange of stock by the taxpayers.

The question for the Court to decide is: Was such corporate transaction a corporate "reorganization", as the term "reorganization" is defined in Section 368(a) (1), Internal Revenue Code of 1954, 26 U.S.C.A. § 368(a) (1), even though Rio Development Company engaged in the land development business and thereafter the new Insurance Company engaged in the insurance business?

The plaintiff taxpayers contend there was a corporate reorganization. The Government, Defendant in this cause, maintains that there was not a corporate reorganization under Section 368(a) (1) of the Internal Revenue Code of 1954, because there was not a continuity of business enterprise before and after the reorganization; and that this is a prerequisite as set out in the Treasury Regulations.

This case is governed by the Internal Revenue Code of 1954, 26 U.S.C., the applicable sections of which provide:

"§ 368. Definitions relating to corporate reorganizations

"(a) Reorganization.—

"(1) In General.—For purposes of parts I and II and this part, the term "reorganization" means—

\* \* \* \* \* \*

"(C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of substantially all of the properties of another corporation, but in determining whether the exchange is solely for stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded;

"(D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of is shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356;"

"Sec. 354. Exchanges of stock and securities in certain reorganizations

"(a) General rule.—

"(1) In General.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

It is conceded that the 1939 Internal Revenue Code was the same in this respect as the 1954 Code, and that the corresponding Treasury Regulations issued under the 1939 Code are similar to the corresponding Treasury Regulations issued under the 1954 Code.

The Treasury Regulation states: "Requisite to a reorganization under the Code,

are a continuity of business enterprise under the modified corporate form." [1]

The Government contends that since there was a lack of "continuity of the business enterprise", there was not a reorganization as contemplated under the statutes.

The question for this Court to decide is the meaning of "continuity of business enterprise", and whether or not it exists in this case.

The Government takes the position that "continuity of business enterprise" means that the new corporation must engage in the same identical or similar business. Stated in another manner, the Government maintains it is necessary that there must be an identity of type of business before and after the reorganization.

The plaintiff taxpayers have cited to the Court the case of Becher v. Commissioner, 221 F.2d 252 (2d Cir.1955)' affirming 22 T.C. 932 (1954), which the Government has tried to distinguish. In this case the taxpayer owned all the stock in a corporation engaged in the sponge rubber and canvass-product manufacturing business. The new corporation engaged in the business of manufacturing upholstered furniture. In that case, the Government took the position that there had been a reorganization and that a cash distribution to the shareholders of the old corporation was taxable as "boot" and was ordinary income to the shareholders. The Government prevailed in that case, and the Court, at 221 F.2d 252, 253, said:

> " * * * but the Tax Court here correctly held that a business purpose does not require an identity of business before and after the reorganization. * * * "

Other cases cited are Pebble Springs Distilling Co. v. Commissioner, 231 F.2d 288 (7th Cir.1956), cert. denied 352 U.S. 836, 77 S.Ct. 56, 1 L.Ed.2d 55 affirming 23 T.C. 196 (1954). There the old corporation had the power to carry on both a whiskey distilling business and a real estate business, but it engaged solely in the real estate business.

Another case cited to the Court is Morley Cypress Trust v. Commissioner, 3 T.C. 84 (1944). In that case the old corporation owned land held for timber and the land was conveyed to a new corporation engaged in the oil business.

The Government tries to distinguish these last two cases by saying that in the Pebble Springs Distilling Co. case the new corporation could engage in the whiskey distilling business if it had wanted to, and that in the Morley Cypress Trust case, after the problem of continuity of business enterprise had been presented, the required continuity could have been found because both the old and the new corporations were actively engaged in exploiting the natural resources of the same land.

The Government also contends that under Texas law an insurance company cannot engage in any business other than that of insurance.

The Morley Cypress Trust case cited above, this Court believes, is the case most like the case before the Court. In the Morley Cypress Trust case the land was held for timber. In this case it was held for development. In the Morley case land was conveyed to a new oil corporation for use in the oil business. In this case, land (plus proceeds from the sale of land) was conveyed to a new corporation to furnish the means to capitalize a new insurance business.

The Government contends that the corresponding Treasury Regulation issued under the 1939 Code was in existence when the 1954 Code was enacted and Congress did not see fit to make any changes; that Treasury Regulations have the force of law when the Code section which they interpret is reenacted after they have once been promulgated, and cites Roberts v. Commissioner, 9 Cir., 176 F.2d 221, 10 A.L.R.2d 186.

The Government has been unable to present the Court with any decision in

---

1. Treasury Regulation 118, Section 39.112(g)–1(b) under the 1939 Code; and Section 1.368–1(b) under the 1954 Code.

which the meaning of "continuity of business enterprise" as used in the Treasury Regulations, has been interpreted. Since no Court had upheld the contention made by the Government as to the interpretation to be given said words in the Regulations, it is unfair to say that Congress had an opportunity to make a change in passing the 1954 Code. Congress was not apprised of the meaning that the Government wishes to give to said language in the Regulations, and therefore the rule expressed in Roberts v. Commissioner, supra, is not controlling here.

■ This Court finds that no court has passed on the question of whether "continuity of business enterprise", as used in the Regulations, means that the new corporation must engage in the identical type of business or a similar business; and it is, therefore, held that this Court is not bound by any Treasury Regulation since it is the province of the Court to decide whether the Treasury Regulation means what the Government contends it means; and whether or not if it means what the Government contends, said Regulation is one that could be promulgated under the appropriate sections of the Internal Revenue Code.

■ This Court finds that "continuity of business enterprise", as used in the Regulations, does not mean that the new corporation must engage in either the same type of business as the old or a similar business, for if this be the requirement, then said Regulation is without authority.

To qualify as a "reorganization" under the applicable statutes, the new corporation does not have to engage in an identical or similar type of business. All that is required is that there must be continuity of the business activity.

This Court therefore finds that there was a reorganization under the applicable sections of the Internal Revenue Code.

Under the facts stipulated in this case, it is found that there was a continuity of the business activity and all requisites having been complied with, the plaintiff taxpayers have a right to a refund of the income taxes paid on the exchange of stock. The amounts to be refunded by the Government are to be those as stated in the Stipulation.

The Clerk will notify Counsel for the plaintiffs to submit an appropriate order and judgment.